UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS A. RODRIGUEZ,

       Petitioner,

                   Case No. 8:10-CV-2591-T-30MAP
                         8:09-CR-133-T-30MAP

UNITED STATES OF AMERICA,

       Respondent.

_____/

O R D E R

    This cause comes on for consideration of Petitioner's
Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody (CV-D-1, CR-D-88), and
the Government's response (CV-D-6).

    By way of background, Petitioner was originally charged
by an Indictment on November 21, 2008, with four counts of
distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1)
and (b)(1)(C).  Assistant Federal Public Defender Howard
Anderson was appointed to represent Petitioner.  Petitioner
proceeded to trial, which ended in a mistrial on July 29,
2009, when the jury was unable to come to a unanimous
decision.  On August 13, 2009, a Superseding Indictment was
filed against Petitioner.  The Superseding Indictment included
the original four charges and added a fifth Count of

distribution of cocaine.  Petitioner again proceeded to trial on September 15, 2009.  At the close of the Government's evidence, the Court granted a judgment of acquittal as to Count Five.  Counsel for Rodriguez then presented evidence in support of the defense.

A jury found Petitioner guilty of the remaining four Counts on September 17, 2009.  On December 1, 2009, the Court sentenced Petitioner to a term of imprisonment of 24 months to run consecutive to the 18-month sentence imposed in Case Number 8:04-Cr-244-T-27TGW.  Petitioner did not appeal.

On November 17, 2010, the Court received Petitioner's section 2255 motion.  Petitioner first alleges that his counsel was ineffective in failing to file an appeal. According to Petitioner's written motion, he requested his attorney to appeal on the day of sentencing.  He further claims that counsel was ineffective in failing to file a motion for return of Petitioner's Tahoe truck.  Finally, Petitioner claims his counsel was ineffective in failing to fully investigate the case and challenge the sufficiency of the evidence against Petitioner.

With regard to Petitioner's contention that his counsel failed to file an appeal despite Petitioner's alleged request

that he do so, the Court found an evidentiary hearing was appropriate.   See Gomez-Diaz v. United States, 433 F.3d 788 (11th Cir. 2005) (finding an evidentiary necessary to determine whether the defendant's statement of his desire to appeal was sufficient to trigger the per se duty to appeal outlined in Roe v. Flores-Ortega, 528 U.S. 470 (2000).   The Court appointed attorney Rochelle Reback to represent Petitioner at the evidentiary hearing.   The Court held an evidentiary hearing on March 1, 2011.   Petitioner and AFPD Howard Anderson testified at the hearing.

## TESTIMONY PRESENTED AT THE HEARING

Petitioner testified that he had previously pled guilty in another Federal case and knew what it meant to waive his right to appeal.   Petitioner testified that on December 1, 2009, after his sentencing hearing related to this case, Anderson told him he would meet with him later about an appeal.   Petitioner admitted that he did not tell Anderson to file an appeal on that day.   Petitioner stated that at some point within the next ten days, Anderson met with him at the Pinellas County Jail to discuss an appeal.   According to Petitioner, Anderson talked to him about how an appeal works. Petitioner testified that Anderson told him that Petitioner

3

had gotten a short prison sentence and that an appeal would not matter as Petitioner would go home soon anyway. Petitioner testified that he told Anderson he still wanted to "go for it" and file an appeal.

Petitioner admitted that he had no further conversations with Anderson. Petitioner stated that he requested his docket sheet from Anderson several times both before and after his sentencing. He also stated that some of his families members had made attempts to contact Anderson about getting the docket sheet. Petitioner explained that he eventually received the requested docket sheet in the mail from Anderson. He further explained that he had to sign for the legal mail at Coleman. He, however, did not recall signing for any other legal mail from Anderson.

Petitioner testified that he reviewed the docket sheet. He testified that he requested the docket sheets to see what was going on in his case. He said he did not see in particular what he was looking for on the docket sheet. He, however, did not recall whether the docket sheets indicated anything about an appeal.

Petitioner testified that he spoke to Anderson about his truck before and possibly after his sentencing. According to

Petitioner, Anderson told him it was something Petitioner needed to take care of himself.   Petitioner, however, testified that Anderson did not tell him the Federal system had nothing to do with the truck.   Petitioner admitted he filed motions relating to the truck in both State and Federal court.  When asked why Petitioner waited nearly a year to file a § 2255 motion relating to failure to file an appeal, Petitioner testified that he thought the appeal had been filed and thought Anderson would contact him to tell him what was going on with the appeal.   He testified that at some point another inmate checked on his case and told him that no appeal had been filed.

AFPD Howard Anderson testified that he had a total of 12 years experience working as a Public Defender for the State and Federal systems, and 4 years experience as an Assistant State Attorney.  He testified that he generally meets with his clients within ten days of the sentencing hearing to discuss appellate right and determine whether the client wants to file an appeal.  Anderson explained that the office of the Federal Public Defender has an appellate division, he personally handles six to 12 appeals a year.

Anderson   explained   that,   prior to Petitioner's

sentencing, he and Petitioner were concerned about Petitioner's sentencing exposure being 15 years because of an aggravated assault charge from New Jersey. They eventually learned prior to sentencing that the charge had been dismissed. Ultimately, Petitioner's sentencing exposure was 21-24 months. Anderson testified that he met with Petitioner regarding the sentencing and told him he would ask for 21 months and for the sentence to run concurrent to his sentence for violation of probation.

According to Anderson, Petitioner did not tell him he wanted to appeal at sentencing. Anderson explained that he told Petitioner he would meet with him later. Anderson testified that he met with Petitioner on December 8, 2009 at the jail to discuss appellate options. Anderson testified that he discussed with Petitioner that he had maybe one appealable issue. Anderson explained to the Court that this issue related to the curtailment of evidence relating to the theory of defense.

Anderson also testified that he told Petitioner that Petitioner had "dodged a bullet" regarding his sentencing and that he needed to be careful if he got in any more trouble because the penalties would be more severe and that Petitioner

6

would be facing a sentence in excess of 15 years.  According to Anderson, Petitioner told him there was no need to appeal and that he was fine with the sentence.  Anderson stated that Petitioner said he was positive that he did not want to appeal.  Anderson explained that Petitioner said he just wanted to get the sentence behind him and move on.  Anderson testified that Petitioner told him he was not going to get into any more trouble and that he planned on moving out of Florida upon his release.  Anderson described Petitioner as being "adamant" about not appealing.

Anderson testified that he had notes relating to his representation of Petitioner.  Those notes were entered into evidence.  Anderson's notes of December 1, 2009, reflected Petitioner had been sentenced and the terms thereof and that Anderson was "[t]o meet with client concerning appeal."  (GX 1.)  Anderson's notes of December 8, 2009, state in pertinent part:

> 12/8/09   Meeting with client Pinellas County Jail. Discussed post-sentencing options _and_ appeal.  Client indicated that he did _not_ want an appeal and was satisfied and will just serve sentence.  Advised client would be closing out file and wished him the best of luck.

(Id.)

7

Anderson testified that he sent a close-out letter to Petitioner at Coleman on January 16, 2010. The letter, a copy of which was introduced into evidence, stated in part:

> You have indicated that you do not wish to appeal your sentence and I agree with your decision. All matters have now been completed that were covered under the Order of Appointment of this office in your case. My ability to represent you under this Order has ended. I can no longer represent you without further order of the court and the file in your case will be closed.
>
> Although I no longer represent you, if you have any specific questions about the case which I have not previously discussed with you, please do not hesitate to contact me....

(GX 2.) Anderson explained that, at the time of the letter, his secretary was unable to locate Petitioner at either Pinellas or Citrus Jail, so he and his secretary together checked online and determined from the Bureau of Prisons website that Petitioner was at Coleman Correctional Institution.

Anderson had no information as to whether Petitioner received the letter. Anderson explained that his Office typically receives letters back from the correctional facility if the facility receives mail for an inmate who is not housed there. Anderson stated that nothing was returned with regard to the close-out letter sent to Rodriguez.

Anderson testified that Petitioner sent him a letter on February 12, 2010 requesting his docket sheet and discovery. According to Anderson, the letter did not address any appeal. Anderson said his Office sent a letter to Petitioner with a copy of the pleading index as well as the court docket sheet. A copy of this letter, however, was not maintained in the case file.

According to Anderson, Petitioner's wife called Anderson after Petitioner filed his § 2255 motion. Anderson related that Petitioner's wife inquired about how to get the truck out of the Tampa impound. Anderson explained to her that she would have to pay the fees that had accrued to get the car released. Rodriguez's wife did not inquire about why Anderson failed to file an appeal.

When asked whether he had Petitioner sign a form stating that he did not wish to appeal, Anderson stated that it was not his custom to do so. He explained that prior to Petitioner, he had never had a client allege that he had wanted to file an appeal after he had told Anderson that he did not want to appeal.

### THE COURT'S CREDIBILITY FINDINGS

After hearing the testimony of Petitioner and AFPD

9

Anderson, observing their demeanor, and taking into account the witnesses' interests in the outcome of these proceedings, the Court finds that Petitioner's testimony that he told Anderson he wanted to appeal is not credible and fully credits the testimony of Anderson.

First, Petitioner's testimony that he told Anderson he wanted to appeal during their post-sentencing meeting at the Pinellas County jail, conflicts with his written statement in his § 2255 motion. As the Government pointed out, Petitioner stated in his written § 2255 motion, which he signed under penalty of perjury, that he "requested Counsel to file a [sic] Appeal on the day of sentencing...." (D-1, p. 4.) However, at the hearing, Petitioner admitted that they did not discuss an appeal at the sentencing hearing and that he told Anderson he wanted to appeal at their post-sentencing meeting at the jail.

Furthermore, Petitioner's actions after the December 8, 2009 meeting do not support his testimony that he asked Anderson to file an appeal. At no time after December 8, 2009, did Petitioner inquire of Anderson as to the status of his appeal. While Petitioner wrote Anderson requesting a docket sheet, he did not inquire about the appeal.

10

Furthermore, Petitioner waited nearly one year after his sentencing to file a § 2255 motion raising the failure to file an appeal. Even then, his brief in support of his motion only addresses the seizure of his truck. (D-1, p.7.)

Furthermore, Petitioner was unable to provide any detailed information relating to the date or month in which he allegedly learned no such appeal had been filed. Despite reviewing the docket sheet, Petitioner did not notice whether the docket sheet indicated whether an appeal had been filed. Moreover, when Petitioner's wife contacted Anderson after the filing of the § 2255 motion, she did not ask Anderson about his failure to file an appeal. Rather, she only inquired about how to get Petitioner's truck released.

On the other hand, AFPD Anderson appeared completely credible at the hearing. Anderson is an experienced attorney who has been practicing law for approximately 16 years. Twelve of those years Anderson has practiced as a State or Federal Public Defender. Anderson testified that he generally files six to 12 appeals a year on behalf of his clients. There is simply no credible evidence that Anderson would not have filed an appeal had Petitioner requested him to do so.

Moreover, Anderson's testimony is supported by his

11

contemporaneous Attorney Notes of December 1 and 8, 2009, which reflect that Anderson and Petitioner met on December 8, 2009.  Those notes show that Anderson and Petitioner discussed an appeal but that Petitioner did not wish to appeal and that he was satisfied and would just serve his sentence.  (GX 1.)  Anderson's January 16, 2010 letter confirmed his understanding that Petitioner did not wish to appeal his conviction and sentence.  (GX 2.)

Having assessed the credibility of the witnesses, the Court now turns to the issues presented in Petitioner's Motion.

## I.   FAILURE TO FILE AN APPEAL

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court addressed the factors to be considered in determining whether an attorney's failure to file a notice of appeal constitutes ineffective assistance.  First, the Court held that the test set forth in Strickland applies to such cases in which the defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant."  Flores-Ortega, 528 U.S. at 476-77.  The Supreme Court explained that a lawyer who disregards his

client's specific instructions to file a notice of appeal is per se deficient, and the defendant is entitled to a belated appeal without a showing that the appeal would likely have merit. Id. at 477. Significantly, however, where a client instructs his lawyer not to file an appeal, a lawyer cannot be found deficient for failing to file an appeal. Id. ("a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently), citing Jones v. Barnes, 463 U.S. 745, 751 (1983).

Flores-Ortega specifically addressed the issue of whether counsel is deficient for failing to file an appeal when the defendant has not clearly conveyed his wishes one way or another. Id. Pursuant to Flores-Ortega, the court must first determine whether counsel consulted with the defendant about an appeal. Id. at 478. If so, "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Flores-Ortega, 528 U.S. at 477 (citation omitted).

Anderson undisputably consulted with Petitioner about an appeal on December 8, 2009. Petitioner explicitly admitted that Anderson spoke with him about his right to appeal and explained how an appeal works. Furthermore, Anderson explained to Petitioner that there was one possible appellate issue and also warned Petitioner about possible future ramifications if he were to be convicted in the future. It is clear from Anderson's testimony and supporting documentation that Petitioner told him that he did not wish to appeal. Therefore, the per se duty to file a notice of appeal outlined in Flores-Ortega was not triggered.

In light of the foregoing, the Court finds that Anderson's representation of Petitioner did not fall below an objective standard of reasonableness. See Strickland v. Washington, 466 U.S. 668 (1984). Anderson did not disregard an express instruction from Petitioner to file a Notice of Appeal, and he fulfilled his constitutional duty to consult with Petitioner regarding an appeal and determine his client's wishes. The Court is satisfied that defense counsel fully performed in accordance with his obligations under the law. Therefore, Petitioner's claim of ineffective assistance of counsel for failing to file an appeal must be denied.

14

## II.  Failure to File a Motion Requesting Return of the Truck

Petitioner next claims that his counsel was ineffective in failing to file a motion for return of property pursuant to Fed.R.Crim.P. Rule 41(g) when the Government confiscated and forfeited Petitioner's Tahoe truck.

The Government states that it did not seize the truck. Rather, the truck was seized by the Tampa Police Department. The Government presented evidence that Petitioner was served with a summons and complaint relating to the forfeiture on September 22, 2009 (Cv-D-6-1, p.1), and that the City of Tampa attempted to follow-up with Petitioner three times, but each time the mailing was returned noting that the inmate refused delivery (Cv-D-6-1, p. 2-3). A final default judgment was entered on December 10, 2009, in Hillsborough County Circuit Court, in Case No. 09-19853. (CV-6-1, p.4.)

As the Government did not seize Petitioner's truck, Petitioner has failed to show that his attorney's failure to challenge the seizure of the truck was unreasonable. Nor has Petitioner demonstrated any prejudice. The seizure and forfeiture of Petitioner's truck was a separate action that occurred in State rather than Federal court. Thus, Petitioner is not entitled to any relief as to this claim.

III.      **FAILURE TO CHALLENGE SUFFICIENCY OF EVIDENCE**

Petitioner contends his counsel was ineffective in failing to challenge the sufficiency of the Government's evidence.  Petitioner has alleged that his counsel failed to challenge the non-existence of fingerprints, drugs or money and, further, failed to attack the credibility of the confidential informants.

Petitioner's claim that his defense counsel failed to challenge the sufficiency of the evidence is contradicted by the record.  At trial, the Government presented testimony from Byron Brown and Maxie Eddins, both whom acted as confidential informants.   Petitioner's attorneys cross-examined both witnesses and questioned them about their extensive criminal histories in an attempt to show that the confidential informants were not credible.

Defense counsel presented the testimony of Officer Harrell and LeShawn Crowder.  Officer Harrell admitted that he made no attempt to lift prints from the evidence such as the drug baggies.  He also admitted it was a possibility that they could have lifted prints from the baggies.

Crowder, a co-worker of Petitioner, testified that Brown came into the club two times a week.  Crowder explained that

16

Brown was always drunk.  She testified that she often saw Evans at the club as well.  She said she never saw Brown or Evans have a conversation with Petitioner.  Crowder testified that Petitioner was always very busy at work and that he did not have time to leave the club floor because he was always needed at his job.  She testified that she never saw Petitioner hand any small packages to anyone while he was working.

At the close of the Government's evidence, the defense moved for a judgment of acquittal and argued that the only evidence supporting the charges was the testimony of the confidential informants. The motion for judgment of acquittal was successful as to Count Five.  The Court, however, found that the Government had presented sufficient evidence for a reasonable jury to find Defendant guilty of the other four Counts and denied the motion as to those Counts.

During closing argument, defense counsel argued that Detective Harrell targeted Petitioner because he believed Petitioner had some connections to the Latin Kings gang. Anderson argued that the confidential informants lied to assist law enforcement with its investigation.  Anderson attacked the credibility of the confidential informants.  He

pointed out that the confidential informants were convicted felons and pointed out inconsistencies in their testimony. Anderson argued that Evans was a "rogue informant" who made his own cases to get paid.

In light of the foregoing, the Court finds that Petitioner has not shown that his counsel failed to attack the sufficiency of the evidence, and therefore he is not entitled to relief as to this claim.

## IV.   FAILURE TO FULLY INVESTIGATE THE CASE

Finally, Petitioner contends that his counsel failed to fully investigate case and that the alleged failure caused Petitioner to be convicted.  (Cv-D-1, p.6.)

Petitioner's claim is extremely vague.  He fails to include any specificity with regard to what his counsel allegedly failed to do.  Petitioner doesn't identify any witnesses that defense counsel should have investigated.  Nor does he show how different conduct would have likely changed the result.  Vague, conclusory, or speculative allegations that lack factual substantiation are not sufficient to support an ineffective assistance of counsel claim.  <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991).  As such, Petitioner is not entitled to relief as to this claim.

IT IS therefore ORDERED that:

(1)  Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1, CR-D-88) is DENIED.

(2)  The Clerk is directed to enter judgment in favor of the Government and CLOSE the civil case file.

### CERTIFICATE OF APPEALABILITY AND

### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were

'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this 15th day of March, 2011.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE